Adam C. Anderson (Bar No. 024314)
ANDERSON BANTA CLARKSON PLLC
48 North Macdonald
Mesa, AZ 85201
480-272-5983
adam@abclawgroup.com
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## PHOENIX DIVISION

| | |
|---|---|
| DARYL PUTMAN,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>IQ DATA INTERNATIONAL, INC.,<br><br>　　　　　Defendant. | No.<br><br>COMPLAINT & TRIAL<br>BY JURY DEMAND |

NOW COMES the plaintiff, DARYL PUTMAN, by and through her attorneys, ANDERSON BANTA CLARKSON PLLC, and for her Complaint against the defendant, IQ DATA INTERNATIONAL, INC., the plaintiff states as follows:

### I.   PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq., and Electronic Funds Transfer Act (hereinafter, "EFTA"), 15 U.S.C. §1693, et seq.

## II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and the EFTA 15 U.S.C §1693 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## III. PARTIES

4. DARYL PUTMAN, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Sun City, County of Maricopa, State of Arizona.

5. As a natural person, Plaintiff is a "consumer" as that term is defined by 15 U.S.C §1693a(b).

6. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly owed by Plaintiff to Bell Mirage Estates Apts (AZ) (hereinafter, "the Debt").

7. The debt that Plaintiff allegedly owed Bell Mirage Estates Apts (AZ) was for unpaid rent and cleaning/damage repair costs at Plaintiff's previous primary residence.

8. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

9. At all relevant times, Plaintiff had an account in her name at BBVA Compass Bank (hereinafter, "Compass Account").

10. At all relevant times, the account held by Plaintiff at Compass was an asset account established to hold funds used primarily for Plaintiff's personal use and/or household expenditures.

11. At all relevant times, the Compass Account held by Plaintiff was an "account" as that term is defined by 15 U.S.C. §1693a(2).

12. At all relevant times Compass was a financial organization responsible for holding funds in an account belonging to Plaintiff.

13. At all relevant times, Compass was a "financial institution" as that term is defined by 15 U.S.C. §1693a(9).

14.     IQ DATA INTERNATIONAL, INC., (hereinafter, "Defendant") is a business entity engaged in the collection of debt within the State of Arizona. Defendant is incorporated in the State of Washington.

15.     The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

16.     Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

17.     During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

18.     At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

19.     At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

20.     At all relevant times, Defendant received funds from Plaintiff's Compass Account, which were transferred to Defendant electronically.

21.     Defendant instructed Compass, through an electronic terminal, by telephone, or other electronic means, to transfer funds from Plaintiff's Compass Account to Defendant.

22.     Defendant received funds from Plaintiff's Compass Account.

23.     At all relevant times, the transfer of funds from Plaintiff's Compass Account to Defendant were "electronic fund transfers" as that term is defined by 15 U.S.C. §1692a(7).

24.     The transfer of funds from Plaintiff's Compass Account to Defendant were authorized by Plaintiff orally, in advance of the transfer, and were to recur regularly.

25. At all relevant times, the transfer of funds from Plaintiff's Compass Account to Defendant were "preauthorized electronic fund transfers" as that term is defined by 15 U.S.C. §1693a(10).

### IV. ALLEGATIONS

### COUNT I: DARYL PUTMAN v. IQ DATA INTERNATIONAL, INC. FOR VIOLATIONS OF THE FDCPA

26. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

27. In or around April 2013, Plaintiff submitted a rental application for a house.

28. During the application process, Plaintiff was informed that her rental application was denied based on a delinquent account that was listed on her credit report.

29. The delinquent account was reported by Defendant.

30. Subsequent to Plaintiff's discovery of the delinquent account on her credit report, Plaintiff initiated a telephone call to Defendant.

31. During the aforementioned telephone call between Plaintiff and Defendant, Defendant informed Plaintiff the Debt was for unpaid rent and other charges at Plaintiff's previous primary residence.

32. Defendant further informed Plaintiff that the outstanding balance of the Debt was $4,600.

33. Plaintiff requested that Defendant provide her with documentation to validate the Debt.

34. Defendant informed Plaintiff that in order to comply with Plaintiff's request for validation of the Debt, Plaintiff had to submit a written request to Defendant.

35. Subsequent to the aforementioned telephone conversation, Plaintiff sent Defendant a written request for validation of the Debt.

36. On or about May 22, 2013, Plaintiff received validation of the Debt from Defendant. (A true and exact copy of Defendant's validation of the Debt, dated May 22, 2013, is attached hereto as **Exhibit A**).

37. The aforesaid validation of the Debt, dated May 22, 2013, listed the total outstanding balance of the Debt as $4,604.37.

38. The aforesaid validation of the Debt listed the outstanding balance of the Debt in the following way:

    i. Principal Due:   $3,196.90
   ii. Interest Due:    $737.28
  iii. Attorney Due:  $525.00
  iv. Court Due:     146.00
   v. Total Due:     4604.37

39. Defendant's aforesaid representation that a portion of the Debt included court fees had the effect of conveying to an unsophisticated consumer that Defendant had already filed a lawsuit against Plaintiff relative to the Debt.

40. Upon information and belief, as of May 22, 2013, the date listed on the validation of the Debt, Defendant had not filed a lawsuit against Plaintiff relative to the Debt.

41. Upon information and belief, Defendant filed the lawsuit against Plaintiff relative to the Debt on May 31, 2013.

42. By characterizing a portion of the outstanding balance of the Debt as court fees prior to actually filing a lawsuit against Plaintiff relative to the Debt, Defendant falsely represented the character, amount or legal status of the Debt.

43. By characterizing a portion of the outstanding balance of the Debt as court fees prior to actually filing a lawsuit against Plaintiff relative to the Debt, Defendant used false, deceptive, and misleading means in its attempt to collect the Debt.

44. Defendant's aforesaid representation that Plaintiff owed court fees relative to the Debt constituted an unfair and unconscionable attempt to collect the Debt given that at the time of its representation, Defendant had not yet filed a lawsuit against Plaintiff relative to the Debt.

45. In or around July 2013, Plaintiff and Defendant engaged in a telephone conversation, wherein Defendant attempted to collect the Debt.

46. During the course of the aforementioned telephone conversation between Plaintiff and Defendant, Defendant informed Plaintiff that it had filed a lawsuit against Plaintiff for the Debt.

47. Defendant told Plaintiff that it would not enforce the judgment against her if Plaintiff agreed to enter into a payment plan with Defendant relative to the Debt.

48. Plaintiff agreed to tender bi-weekly payments of $400 to Defendant relative to the Debt with payments to commence on or about July 3, 2013.

49. Plaintiff agreed that the payment plan would be in effect until the balance of $4,604.37 relative to the Debt was paid off.

50. Defendant told Plaintiff that if she defaulted on the aforementioned payment plan, Defendant would garnish Plaintiff's wages, which would ultimately cost Plaintiff more than the amount Plaintiff was required to pay under the agreed upon payment plan.

51. Plaintiff is employed as a medical assistant and earns $2,272 a month.

52. On average, Plaintiff earns $568 per week.

53. Pursuant to the United States Code, Section 1673:

> "Except as provided in subsection (b) of this section and in section 1675 of this title, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week, or (2) the amount by which his disposable earnings for that week exceed thirty times the Federal minimum hourly wage prescribed by section 206 (a)(1) of title 29 in effect at the time the earnings are payable, whichever is less."

15 U.S.C. § 1673.

54. Pursuant to the aforementioned statute, a judgment creditor is allowed to garnish a maximum of 25 percent of a judgment debtor's weekly earnings.

55. Thus, if Defendant were to garnish Plaintiff's weekly earnings, the maximum amount that Defendant would be entitled to is $142 per week.

6

56. Under the agreed upon payment plan, entered into by Plaintiff and Defendant in or around July 2013, Plaintiff was required to tender $200 a week to Defendant.

57. Therefore, Defendant's representation that a potential garnishment of Plaintiff's wages would cost Plaintiff more than the amount that Plaintiff was required to pay under the payment plan was false, deceptive, and misleading given that a garnishment of Plaintiff's wages would actually cost Plaintiff less than the amount that she was paying to Defendant under the payment plan.

58. In its attempts to collect the debt allegedly owed by Plaintiff to Bell Mirage Estates Apts (AZ), Defendant violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

    a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

    b. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

    c. Used any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning the consumer in violation of 15 U.S.C. §1692e(10);

    d. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f; and,

    e. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

59. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## COUNT II: DARYL PUTMAN v. IQ DATA INTERNATIONAL, INC. FOR VIOLATIONS OF THE EFTA

60. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

61. In or around July 2013, Plaintiff and Defendant engaged in a telephone conversation, wherein Plaintiff agreed to tender bi-weekly payments of $400 to Defendant relative to the Debt with payments to commence on or about July 3, 2013.

62. Plaintiff agreed that the payment plan would be in effect until the balance of $4,604.37 relative to the Debt was paid off.

63. During the course of the telephone call, Defendant informed Plaintiff that it could electronically debit the bi-weekly payments agreed upon by the parties from Plaintiff's account.

64. Plaintiff then provided Defendant with information relative to her Compass Account so that Defendant could automatically withdraw payments from said account in accordance with the terms of the payment arrangement entered into between the parties.

65. During the course of the aforesaid telephone call, Plaintiff provided Defendant with her oral authorization for Defendant to electronically transfer funds from Plaintiff's Compass Account to Defendant in accordance with the bi-weekly payment terms agreed upon by the parties.

66. At no time during the aforesaid telephone conversation did Defendant advise Plaintiff that in order for Defendant to be able to transfer funds from Plaintiff's Compass Account, Plaintiff had to provide Defendant with **written** consent to carry out the aforesaid transfer, as required by the Electronic Funds Transfer Act, 15 U.S.C. §1693(e)(a).

67. Plaintiff has not provided Defendant with written authorization to transfer any funds from Plaintiff's Compass Account to Defendant.

68. Defendant has not obtained written authorization from Plaintiff to transfer funds from Plaintiff's Compass Account to Defendant.

69. Plaintiff has not provided Defendant with written authorization for Defendant to carry out any electronic fund transfers from Plaintiff's Compass Account to Defendant.

70. Plaintiff has not informed Defendant that she waived her right to provide Defendant with written authorization to execute the transfer of funds from Plaintiff's Compass Account to Defendant.

71. On or about July 8, 2013, Defendant attempted to withdraw $400 from Plaintiff's Compass Account.

72. On or about July 8, 2013, Defendant withdrew $400 from Plaintiff's Compass Account.

73. On or about July 8, 2013, Defendant transferred to Defendant $400 in funds from Plaintiff's Compass Account.

74. On or about July 8, 2013, Defendant successfully transferred the aforesaid funds to Defendant from Plaintiff's Compass Account.

75. On or about July 8, 2013, at the time Defendant transferred the aforesaid funds to Defendant from Plaintiff's Compass Account, Defendant had not obtained written authorization from Plaintiff to make the aforesaid transaction.

76. On or about July 8, 2013, at the time Defendant transferred the aforesaid funds to Defendant from Plaintiff's Compass Account, Compass had not obtained written authorization from Plaintiff to allow Defendant make the aforesaid transaction.

77. At no time prior to July 8, 2013, did Defendant provide Plaintiff with a copy of the putative written authorization Plaintiff may have provided to Defendant to authorize Defendant to transfer funds from Plaintiff's Compass Account to Defendant.

78. The Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.*, provides in part as follows:

    §1693e – Preauthorized Transfers

> (a) A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made…

79. On or about July 8, 2013, Defendant carried out a preauthorized electronic fund transfer from Plaintiff's Compass Account without having first obtained written consent from Plaintiff to carry out the aforesaid transaction.

80. On or about July 8, 2013, Defendant carried out a preauthorized electronic fund transfer from Plaintiff's Compass Account without having first provided Plaintiff with a copy of the putative written authorization Plaintiff may have provided to Defendant to carry out the aforesaid transaction.

81. On multiple occasions, Defendant transferred funds from Plaintiff's Compass Account to Defendant without obtaining a written authorization signed or similarly authenticated form from Plaintiff for Defendant to carry out the preauthorized electronic fund transfer's from Plaintiff's Compass Account, as delineated above, thereby violating, 15 U.S.C. §1693e(a).

82. On multiple occasions, Defendant transferred funds from Plaintiff's Compass Account to Defendant without providing Plaintiff a copy of a written authorization signed or similarly authenticated form by Plaintiff for Defendant to carry out the preauthorized electronic fund transfer's from Plaintiff's ANBS account, as delineated above, thereby violating, 15 U.S.C. §1693e(a).

83. Defendant's conduct in violating 15 U.S.C. §1693e(a), directly and proximately caused Plaintiff to suffer damages as set forth in the paragraphs above.

## V. JURY DEMAND

84. Plaintiff hereby demands a trial by jury on all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, DARYL PUTMAN, by and through her attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against Defendant as follows:

1         a.    All actual compensatory damages suffered;

2         b.    Statutory damages of $1,000.00 under the FDCPA;

3         c.    Statutory damages of $1,000.00 under the EFTA;

4         d.    Plaintiff's attorneys' fees and costs;

5    Any other relief deemed appropriate by this Honorable Court.

7                                      Respectfully Submitted,

9                       **By:**   s/ Adam C. Anderson

10                             **Adam C. Anderson**

11                             **Attorney for Plaintiff,**

12                             **DARYL PUTMAN**

15 **September 10, 2013**

16 **Adam C. Anderson (Bar No. 024314)**

17 **ANDERSON BANTA CLARKSON PLLC**

18 **48 North Macdonald**

19 **Mesa, AZ 85201**

20 **480-272-5983**

21 **adam@abclawgroup.com**

22 **Attorney for Plaintiff**